# Illinois Official Reports

## Appellate Court

---

### *People v. Boose*, 2014 IL App (2d) 130810

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OTIS B. BOOSE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0810 |
| Filed | September 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was convicted of violating an order of protection entered for his former wife by coming within 500 feet of her and by calling her telephone, the trial court's order denying defendant's *pro se* claim of ineffective assistance of counsel was vacated and the cause was remanded for a new preliminary hearing pursuant to *Krankel* before a different judge, since the proceeding was allowed to become an adversarial hearing not contemplated by *Krankel* when the State's participation required defendant to represent himself as to each of his claims against both defense counsel and the State and that error would not be deemed harmless. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CF-1657; the Hon. James K. Booras, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Thomas A. Lilien and Jessica Wynne Arizo, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial, defendant, Otis B. Boose, was found guilty of two counts of unlawful violation of an order of protection (720 ILCS 5/12-30(a)(1) (West 2010)) and was sentenced to an extended term of four years' imprisonment. Defendant appeals, arguing that he was deprived of a fair preliminary inquiry into his *pro se* claims of ineffective assistance of trial counsel, as required under *People v. Krankel*, 102 Ill. 2d 181 (1984), where the State's participation in the hearing rendered the hearing adversarial. For the reasons that follow, we vacate and remand.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant was charged with two counts of unlawful violation of an order of protection (720 ILCS 5/12-30(a)(1) (West 2010)) after having been previously convicted of domestic battery (720 ILCS 5/12-3.2 (West 2010)). Both counts alleged that defendant had previously been served with an order of protection naming Dorian Davis as the protected party. Count I alleged that defendant violated the order of protection in that he came within 500 feet of Davis. Count II alleged that defendant violated the order of protection in that he had contact with Davis.

¶ 4     At defendant's jury trial, Davis testified that defendant was her ex-husband. They had been married for 17 years prior to their divorce on May 10, 2011, and they had two children. Davis obtained the order of protection against defendant in April 2010. On May 24, 2011, defendant telephoned Davis on her cell phone and asked if he could come over to see their children. Davis told him that he could not come over. Davis admitted that her cell phone showed that a call had been subsequently placed from her phone to defendant's phone. According to Davis, it was an accidental call. Davis thought that one of her grandchildren touched the screen and dialed defendant back.

¶ 5     Davis testified that defendant came to her house at 8:20 p.m. that evening and entered through an unlocked door. He told her that he wanted to talk to her and to find out if the children needed anything to eat. She said no and asked him to leave. He refused to leave, despite being asked to leave several times, and stood less than two feet away from her. Davis could smell beer on defendant's breath. She looked for her cell phone, but she could not find it, so she left the house and drove to her niece's house to call the police. After calling the police and telling them that defendant was at her house, she returned home and saw that defendant was still there. She told defendant that she had called the police and that he needed to leave. Defendant cursed at Davis and began to exit her home. At that point, the police arrived and arrested him.

¶ 6    Davis further testified that, as a part of the order of protection, defendant was to give child support payments to his sister, Marilyn Boose, and then Marilyn was to give the payments to Davis. Defendant was not allowed to give money directly to Davis.

¶ 7    North Chicago police officer Carl Sturt testified that, when he arrived at Davis's home, he saw defendant standing at the bottom of the stairs that led up to the home. Defendant told Sturt that he was there to pay child support and that Davis had called him and asked him to come over. Davis showed Sturt court documents that indicated that defendant was to give the child support payments to Marilyn. Sturt looked at defendant's phone and confirmed that defendant had placed a call to Davis, which had lasted approximately one minute. He also saw that there had been a phone call from Davis to defendant, which had lasted approximately five seconds. Sturt asked Davis about the call placed to defendant, and Davis explained that it had been a misdial.

¶ 8    Following closing arguments, the jury found defendant guilty of both counts of unlawful violation of an order of protection.

¶ 9    Prior to sentencing, defendant filed a *pro se* "Motion to Reduce Sentence," wherein he claimed, *inter alia*, that defense counsel did not represent him adequately. The trial court read the motion, discussed a few of the issues, and then stated that, due to time constraints, it would conduct a *Krankel* hearing at a later date–prior to the hearing on any posttrial motions. Thereafter, defense counsel filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. At the next court date, the trial court heard and denied the motion filed by defense counsel without addressing defendant's *pro se* challenge to the adequacy of counsel's representation. Thereafter, the trial court sentenced defendant to four years in prison. Following the denial of a motion to reconsider defendant's sentence filed by defense counsel, defendant appealed.

¶ 10    On appeal, defendant argued that the trial court erred in failing to inquire into his *pro se* allegations of ineffectiveness, as required by *Krankel*. *People v. Boose*, 2013 IL App (2d) 111276-U (summary order). The State confessed error, and we remanded. *Id*.

¶ 11    At the hearing on remand, held before a different judge, defendant presented his allegations that defense counsel was ineffective. Defendant argued that defense counsel (1) failed to submit certain relevant evidence, such as a "CD," which both the State and defense counsel knew could have exonerated defendant, and an irate phone message from Davis, which would have shown that she wanted her child support payment; (2) failed to subpoena certain witnesses on his behalf, who would have corroborated defendant's claim that Davis had called him; (3) failed to argue that the State did not meet its burden of proving that defendant inflicted bodily harm; (4) was unprofessional, in that she verbally attacked the State when the State mentioned that defendant's children did not like him; (5) failed to challenge certain potential jurors during jury selection; (6) failed to move to dismiss on speedy-trial grounds; (7) failed to enforce a stay that had been granted to defendant; (8) failed to inform the court of "vindictiveness by the State"; and (9) tampered with the order of protection.

¶ 12    As the trial court allowed defendant to argue his points, it periodically interjected and asked him for additional information. When the speedy-trial issue was mentioned, the court asked its clerk to review the file and determine what had happened. The clerk reviewed the filings and then asked the State whether a motion to dismiss had been filed. The State explained that defendant was brought into custody on May 24, 2011, and that on June 20,

2011, defense counsel filed a speedy-trial demand *nunc pro tunc* to May 25, 2011. The court asked defense counsel if she had filed a motion to dismiss, and she stated that she had never filed one, because there were no grounds. The court asked the State: "[D]o you confirm that?" The following transpired:

"[THE STATE]: There were no grounds. The Defendant's first trial date out of the box from his arraignment date was 6/24, June 24th. He was arrested on May 24th. On 6/20 is when speedy trial was filed; and by agreement, the parties continued the trial.

THE DEFENDANT: I object to that.

[THE STATE]: The parties continued–by agreement continued the trial until September 6th.

In September, State asked for a continuance over the Defendant's objection. It was granted. The trial was heard October 7th.

THE COURT: So, there was only 60 days attributable to the State, if any?

[THE STATE]: Correct.

[DEFENSE COUNSEL]: That's correct, Judge."

Later, defendant again brought up the speedy-trial issue, and the following transpired:

"THE COURT: *** Did you ask your attorney to file a motion?

THE DEFENDANT: I never asked her to file any motion. The only motion I said for speedy trial, which I really didn't even have to ask for motion for speedy trial because it's automatically given to you. She said that she put a motion in for a police report.

THE COURT: But if you have asked for a continuance–

THE DEFENDANT: I never asked for a continuance. I never asked for her to put a motion in or anything.

THE COURT: But she asked for the continuance.

THE DEFENDANT: For what reason? The reason when I asked why did she do it, she said for a police report.

THE COURT: Maybe that is what she needed. There was a reason. She explained that."

¶ 13    After the trial court determined that defendant had stated all of his claims, it asked defense counsel to address defendant's claim regarding jury selection. Defense counsel reviewed her notes from jury selection and noted that juror 343 had stated that he had been the victim of a crime and that he would be suspicious of defendant if defendant did not testify. According to defense counsel, she told defendant that she was going to strike the juror but defendant disagreed with her decision. Defense counsel stated that she vividly remembered the discussion with defendant, as he was a very active participant in jury selection, and that they had argued over keeping the juror. The court then inquired of the State: "Is that correct?" The State responded by first correcting defense counsel and clarifying that it was the juror's daughter who had been the victim of the crime and that the juror stated that he was suspicious of the legal system. The State also stated that the juror was African-American. At this point, defendant asked to speak, and the court told him: "I will give you a chance." The State asked to continue and stated: "I believe that that was why

[defendant] wanted to keep him on, juror [*sic*] of his peers." Defense counsel stated that she did not ask defendant if that was why he wanted to keep the juror; she remembered only that they had gotten into an argument about it.

¶ 14    The court next asked defense counsel to address defendant's claim involving the State's failure to meet its burden of proof as to bodily harm. Defense counsel clarified: "There was no mention of bodily harm. He was not charged with it. He was charged with a violation of [an] order of protection."

¶ 15    Defense counsel next addressed defendant's allegation about evidence tampering. She explained to the court that the State had amended the order of protection, because it had listed defendant's address as the Lake County jail and they did not think that it would be fair to defendant to have the jury see that he was living at the jail. Defense counsel stated that she told defendant what they were doing.

¶ 16    Defense counsel next addressed defendant's charge of unprofessionalism. She explained that, when defendant had requested to see his children, the State commented that defendant had not had a visit with his children the entire time that he was in jail so he should not be allowed to visit them now. Defense counsel admitted that she did raise her voice to the State, because she found the comment to be derogatory, but explained that she had been defending defendant.

¶ 17    Defense counsel next addressed defendant's allegation that she had failed to subpoena certain witnesses on his behalf. Counsel acknowledged that defendant told her that he had been at someone's house when Davis called him. She explained to defendant that, although she could send an investigator to question the individuals at the house, there was no point in putting them on the stand. According to counsel, any testimony establishing that Davis had called him and told him to come over would serve only as additional evidence that he went to her house.

¶ 18    The State then asked to respond to defendant's claim regarding the CD. The State explained that, prior to trial, it had tendered to defense counsel a copy of a CD. The State informed defense counsel that the CD was a recording of defendant's phone conversations from the jail and that defendant can be heard telling Davis not to come to court. According to the State, the recording formed the basis of another potential charge, and the State wanted defense counsel to be aware that defendant was having contact with Davis. Defense counsel explained to the court that she had reviewed the CD with defendant and had taken thorough notes. According to defense counsel, Davis can be heard on the CD explaining to defendant why she had called the police. Defense counsel stated that there were over 20 phone calls recorded on the CD, not all with Davis.

¶ 19    Defense counsel next addressed defendant's claim that counsel had been aware of the State's vindictiveness. She denied ever telling defendant that the State was being vindictive. She recalled defendant asking why the State was out to get him, and she had explained to him that it was not.

¶ 20    The court next asked defense counsel to address defendant's claim that a police officer had been seated in the jury box as a potential juror during jury selection. The State and defense counsel briefly explained that the officer had been placed in the box but that the court then asked him to approach the bench and immediately excused him. The State explained: "No one even knew who he was."

¶ 21    The court next inquired about defendant's allegation regarding a stay. Defense counsel stated that she had asked for a stay, that the court had granted it, but that it was not honored by the jail. She stated: "I have no control over what the jail does with that."

¶ 22    Thereafter, the State asked to address a few issues, because it "want[ed] the record to be very, very clear." It showed the court a copy of the order of protection and pointed out where the parties whited out the words "Lake County Jail." The State next addressed the issue regarding proof of bodily harm:

"[THE STATE]: *** [W]e had a certified conviction because Defendant had previously been charged with domestic battery, bodily harm. I believe that is the bodily harm that everyone is getting confused about. The Defendant was charged with that. He pled guilty I believe to the other charge, though, of domestic battery, insulting, provoking; but that is an enhancing factor of an order of protection. That is how the order of protection was enhanceable.

THE COURT: Previous conviction of–

[THE STATE]: Certified conviction of domestic battery with the same victim as the order of protection.

THE COURT: Correct."

Thereafter, the State thoroughly explained that it had no vindictiveness toward defendant.

¶ 23    The trial court denied defendant's claims, stating:

"All the points were addressed. I did not find a scintilla of evidence that would support your claim of ineffective assistance on behalf of [defense counsel], who was a very seasoned defense attorney, gave you good representation; and frankly, [defendant], I can't believe anything you are saying. They disproved you. The record disproves you. Nice try. That is all I can tell you."

¶ 24    Defendant timely appealed.


¶ 25                                    II. ANALYSIS

¶ 26    Defendant argues that he was deprived of a fair preliminary inquiry into his *pro se* claims of ineffective assistance of counsel, where the trial court effectively conducted an adversarial hearing at which both the State and defense counsel presented arguments against defendant's claims. He asks that we reverse and remand for the appointment of counsel to argue his ineffectiveness claims. The State concedes that the preliminary *Krankel* hearing was flawed due to the State's "somewhat more than *de minimis*" participation, but it maintains that the error was harmless, because the trial court fully explored defendant's claims and could have easily found defendant's allegations meritless, based on its own investigation of the facts in open court.

¶ 27    When a defendant brings a *pro se* posttrial claim that trial counsel was ineffective, the trial court must inquire adequately into the claim and, under certain circumstances, must appoint new counsel to argue the claim. *Krankel*, 102 Ill. 2d at 187-89; *People v. Fields*, 2013 IL App (2d) 120945, ¶ 38. New counsel is not automatically required merely because the defendant presents a *pro se* posttrial claim that his counsel was ineffective. *People v. Moore*, 207 Ill. 2d 68, 77 (2003); *Fields*, 2013 IL App (2d) 120945, ¶ 38. Instead, the trial court must first examine the factual basis of the claim. *Moore*, 207 Ill. 2d at 77-78; *Fields*, 2013 IL App (2d) 120945, ¶ 38. The trial court may conduct a preliminary examination by:

(1) questioning trial counsel about the facts and circumstances surrounding the defendant's allegations; (2) requesting more specific information from the defendant; or (3) relying on its own knowledge of counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 78-79; *Fields*, 2013 IL App (2d) 120945, ¶ 39. If, after a preliminary investigation into the allegations, the court concludes that the defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim. *Moore*, 207 Ill. 2d at 77-78; *Fields*, 2013 IL App (2d) 120945, ¶ 38. If the defendant's allegations show possible neglect of the case, the court should appoint new counsel to argue the defendant's claim. *Moore*, 207 Ill. 2d at 78; *Fields*, 2013 IL App (2d) 120945, ¶ 38. We review *de novo* the manner in which the trial court conducted its *Krankel* hearing. *Fields*, 2013 IL App (2d) 120945, ¶ 39.

¶ 28 The State argues that, even where a trial court erred in the manner by which it conducted a *Krankel* inquiry, the error may be found harmless where the court fully explored the defendant's claims and could have easily found the defendant's allegations meritless based on its own investigation of the facts in open court. In support of its position, the State relies on *People v. Jolly*, 2013 IL App (4th) 120981, *appeal allowed*, No. 117142 (Ill. Mar. 26, 2014). It does so without acknowledging that this court has previously declined the State's invitation to find harmless error in a similar case. See *Fields*, 2013 IL App (2d) 120945, ¶ 42.

¶ 29 In *Fields*, during the preliminary hearing on the defendant's *pro se* ineffective-assistance claims, the trial court asked the defendant to explain each of his claims and then asked the State for its position. *Fields*, 2013 IL App (2d) 120945, ¶ 22. The State responded that further inquiry about the claims was unnecessary, for a variety of reasons. *Id*. On one of the claims, the State argued that the law did not require it to do what defense counsel allegedly should have requested. *Id*. As to other claims, the State asserted that they related to matters of trial strategy. *Id*. At one point, defense counsel explained his actions and the State interjected an additional possible explanation. *Id*. Ultimately, the court found no basis for any of the claims and denied the defendant's request to appoint counsel. *Id*.

¶ 30 We found the *Krankel* inquiry improper, stating:

"Although a trial court's method of inquiry at the *Krankel* hearing is somewhat flexible (by virtue of its ability to ask questions of the defendant, the defendant's counsel, etc.), and we can envision a situation where the State may be asked to offer concrete and easily verifiable facts at the hearing, no case law suggests that the State should be an active participant during the preliminary inquiry. In fact, typically, virtually no opportunity for State participation is offered during the preliminary inquiry. [Citations.] If the State's participation during the initial investigation into a defendant's *pro se* allegations is anything more than *de minimis*, there is a risk that the preliminary inquiry will be turned into an adversarial proceeding, with both the State and trial counsel opposing the defendant. That is exactly what occurred here." (Emphasis omitted.) *Id*. ¶ 40.

We noted that the trial court "invited at least equal participation by the State into the preliminary inquiry of defendant's *pro se* ineffective-assistance claims" and "allow[ed] the State to comment and provide counterarguments on defendant's claims." *Id*. ¶ 41. We further noted that "[a]t one point, defense counsel explained his actions and then the State interjected an additional possible explanation for defense counsel's actions, at which point both defense counsel and the State were, essentially, opposing defendant as he argued his position." *Id*.

- 7 -

We rejected the State's argument that "its participation was focused primarily on noting the lack of specificity of particular claims and that other claims merely challenged trial strategy." *Id*. We stated:

> "[E]ven arguing that the claims warranted no further inquiry because they attacked strategy or were not specific was, in fact, advocating a position against defendant. Where the trial court, at various times, allowed both defense counsel and the State to assert that defendant's claims warranted no further investigation, the hearing changed from one consistent with *Krankel* and its progeny to an adversarial hearing where defendant, without waiving his right to be represented, was forced, unrepresented, to argue the merits of his claims." *Id*.

¶ 31    We rejected the State's invitation to find the error harmless, instead relying on cases where "courts have reversed and remanded when the preliminary inquiry morphed into an adversarial hearing with the State participating and the defendant appearing *pro se*." *Id*. ¶ 42 (citing *People v. Cabrales*, 325 Ill. App. 3d 1, 6 (2001), and *Moore*, 207 Ill. 2d at 81). We also noted that the judge who had presided over the hearing was not the same judge who had presided over the trial and thus was not in a position to independently and without State input evaluate the defendant's claims in light of facts within the judge's own knowledge. *Id*. ¶ 42 n.4. Accordingly, we remanded for a new preliminary inquiry before a different judge. *Id*.

¶ 32    The Fourth District was presented with a similar issue in *Jolly* but reached a different result. At the *Krankel* hearing in that case, the defendant's then-attorney was allowed to leave the courtroom, and the defendant appeared *pro se*. *Jolly*, 2013 IL App (4th) 120981, ¶ 24. The defendant's prior counsel (against whom the defendant was bringing his allegations of ineffectiveness) was present and available as a witness. *Id*. The trial court allowed the defendant to exclude him from the courtroom until questioning. *Id*. The court then allowed the defendant to explain why he believed that prior counsel had been ineffective, allowing him to address each allegation. *Id*. ¶ 26. Next, the court allowed the State to present the testimony of prior counsel, who was brought back into the courtroom and sworn. *Id*. ¶¶ 27-33. The court then questioned counsel about the defendant's allegations. *Id*. ¶¶ 34-38. Thereafter, the court found that the defendant's allegations lacked merit and/or related to trial strategy. *Id*. ¶ 39. The court specifically noted that it had presided over the trial and could base its evaluation of the defendant's allegations on its own knowledge of counsel's performance at trial. *Id*.

¶ 33    On appeal, the defendant argued that the trial court erred in the manner by which it conducted the *Krankel* hearing. *Id*. ¶ 43. The Fourth District agreed. However, it concluded that the trial court's procedural errors were harmless beyond a reasonable doubt. *Id*. ¶¶ 54-64. Although it agreed with our decision in *Fields*, it "decline[d] to go so far" as to remand for a new preliminary hearing, based on the facts of the case, finding instead that "neither of defendant's allegations amount to a colorable claim of ineffective assistance of counsel" and, moreover, that "the trial court's own inquiry, without input from the State, elicited sufficient information to show defendant's claims were not colorable." *Id*. ¶ 63.

¶ 34    In support of its conclusion that a harmless-error analysis applied, *Jolly* relied in a cursory fashion on *People v. Nitz*, 143 Ill. 2d 82 (1991). In *Nitz*, the defendant filed a *pro se* motion alleging, *inter alia*, ineffective assistance of counsel, based on counsel's failure to call several witnesses who the defendant claimed would have provided valuable evidence in

his favor. *Id.* at 133. Defense counsel moved to withdraw, but the trial court denied the motion. *Id.* The court held a preliminary hearing at which it heard the defendant's arguments as to why the witnesses should have been called to testify, as well as counsel's explanations for not calling them to testify. *Id.* Following the preliminary hearing, the court ordered that an evidentiary hearing be held with respect to counsel's failure to call two of the witnesses. *Id.* At the evidentiary hearing, the court ordered counsel to question the two witnesses. *Id.* Thereafter, the court determined that the witnesses' testimony was not in accord with the defendant's representations in his *pro se* motion and it denied the defendant's motion. *Id.* at 135.

¶ 35    On appeal, the defendant argued that the trial court erred in failing to appoint new counsel for the defendant. The supreme court agreed. The court stated that, under *Krankel*, once the trial court determined, following the preliminary hearing, that the defendant might have a valid claim of ineffective assistance of counsel, it should have appointed new counsel to represent the defendant at the evidentiary hearing. *Id.* at 134-35. The court stated that it was a conflict of interest for defense counsel to question the witnesses who would ultimately prove counsel's incompetence. *Id.* at 135. Nevertheless, the court found that the trial court's failure to appoint new counsel at the evidentiary hearing was harmless error. *Id.* The court stated: "At the evidentiary hearing, the court allowed the prosecutor and defense counsel to question the witnesses, allowed defendant to submit any questions he wanted to ask the witnesses, and asked the witnesses numerous questions itself." *Id.* The court reviewed the transcript from the evidentiary hearing and agreed with the trial court's conclusion that the witnesses' testimony was contrary to the defendant's representations. *Id.*

¶ 36    *Nitz* does not support *Jolly*'s conclusion that a harmless-error analysis is appropriate where procedural errors resulted in an adversarial *preliminary* hearing. In *Nitz*, unlike in *Jolly*, the trial court conducted a proper preliminary hearing. After deciding that an evidentiary hearing was warranted, the court erred only in requiring the same attorney alleged to have been ineffective to proceed at the evidentiary hearing. The *Jolly* court failed to note this distinction. In the present case (as in *Jolly* and *Fields*), the State's participation in the preliminary hearing effectively required defendant to argue against both defense counsel and the State. Thus, the proceeding changed from one contemplated by *Krankel* and its progeny to an adversarial hearing at which defendant was required, without clearly and formally waiving his right to be represented by an attorney, to represent himself and argue the merits of each of his claims. See *People v. Finley*, 63 Ill. App. 3d 95, 103 (1978) (posttrial motions constitute a critical stage of the prosecution, for which defendant is entitled to representation). We will not deem that error harmless.

¶ 37    Accordingly, based on the foregoing, we adhere to our previous decision in *Fields* and find that, because the State did more than offer concrete and easily verifiable facts at the hearing, the denial of defendant's *pro se* claims must be vacated and the matter must be remanded for a new preliminary inquiry before a different judge.

¶ 38                                          III. CONCLUSION

¶ 39    The order of the circuit court of Lake County is vacated, and the cause is remanded.

¶ 40    Vacated and remanded.