# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Smith*, 2013 IL App (2d) 120691

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND C. SMITH, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0691 |
| Filed | December 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's sentence for escape, the appellate court rejected defendant's contention that the trial court erroneously believed defendant was eligible for an extended-term sentence, the DNA analysis fee was vacated on the ground that the fee had already been assessed in an earlier case, and defendant was entitled to a credit of $112 for various fees imposed as well as the charge assessed under section 5-1101(c) of the Counties Code. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CF-1962; the Hon. James K. Booras, Judge, presiding. |
| Judgment | Affirmed as modified in part and vacated in part. |

| Counsel on Appeal | Thomas A Lilien and Vicki P. Kouros, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Barry W. Jacobs, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Justices Birkett and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1     After a bench trial, defendant, Raymond C. Smith, was convicted of escape, a Class 2 felony (720 ILCS 5/31-6(c) (West 2010)). The trial court sentenced him to seven years' imprisonment, the maximum nonextended term (see 730 ILCS 5/5-4.5-35(a) (West 2010)), and ordered him to pay a $200 DNA analysis fee (730 ILCS 5/5-4-3(j) (West 2010)) and $341 in other assessments. On defendant's motion, the court reduced his prison sentence to six years. Defendant appeals, arguing that (1) his sentence was tainted because the trial judge erroneously assumed that defendant was eligible for an extended-term sentence; (2) the DNA analysis fee must be vacated; and (3) he must receive a monetary credit, against various fines, for time spent in custody before sentencing. We affirm as modified in part and vacate in part.

¶ 2     On November 15, 2011, the trial court held a bench trial. The evidence showed that, on June 18, 2011, defendant was in a jail holding cell on charges of knowingly discharging a firearm in the direction of another person and unlawfully possessing a firearm (case No. 11-CF-1536). He complained of illness, so a police officer called an ambulance. While riding in the ambulance, defendant escaped and ran away. The trial court found defendant guilty of escape.

¶ 3     On May 15, 2012, and June 15, 2012, the trial court held a sentencing hearing. Defendant's mother testified in mitigation and requested that defendant receive probation. A detective who had investigated the events in case No. 11-CF-1536 testified in aggravation. In arguments, the prosecutor noted, "The sentencing option here is obviously 3 to 7 year [*sic*] and it's probationable. I don't believe–I haven't been able to determine so at this point I don't believe–because most of his prior felonies have been Class 4s and 3s, I don't believe he is extendible [*sic*]." The prosecutor continued that defendant's escape had endangered the public; that defendant's criminal history dated back to 2000; and that several sentences of probation and one parole term had been terminated unsatisfactorily. The prosecutor then referenced case No. 11-CF-1536 as proof of defendant's dangerousness and requested that the court sentence defendant to seven years in prison.

¶ 4    Defendant's attorney noted that the State had dismissed the charges in case No. 11-CF-1536. Further, defendant had successfully completed parole in 2005 and, between then and the present case, he had committed only traffic offenses. Defendant's attorney urged a sentence of probation.

¶ 5    In sentencing defendant, the trial judge explained as follows. Defendant had an extensive criminal history and had several terms of probation that were terminated unsatisfactorily, as well as one parole revocation. By escaping from the ambulance, he had threatened the public and himself with serious harm. Also, although the charges in case No. 11-CF-1536 were dismissed, defendant had possessed a gun although he was a felon. To protect the public, and given defendant's dubious rehabilitative prospects, the judge concluded that seven years' imprisonment was proper. The judge did not mention anything about the possibility, or desirability, of an extended-term sentence.

¶ 6    On June 21, 2012, at a hearing, defendant orally moved to reconsider the sentence. Defendant's attorney argued that the court had placed too much weight on case No. 11-CF-1536 and too little weight on defendant's relatively limited record since 2005. The prosecutor countered that defendant's criminal history was substantial and that his escape had been a reckless and dangerous act. The trial judge stated that he had considered case No. 11-CF-1536 solely as proof that defendant, as a felon, had unlawfully possessed a firearm. He also stated that defendant had never completed probation successfully. Defendant's attorney maintained that defendant had successfully completed one probation term. The following colloquy then ensued:

"THE COURT: Tell me which probation term he completed. And you mentioned I gave him the maximum. You know why I gave him the maximum? So I wouldn't have given him an extended term because he deserves it.

MR. RINEHART [defendant's attorney]: He doesn't qualify for an extended term.

THE COURT: Well, I said he deserves.

MR. RINEHART: He doesn't qualify for an extended term.

THE COURT: You're sure?

MR. RINEHART: I'm positive. There is no prior Class 2's [*sic*]. And I believe the successful probationary period was in 99 CF 2421."

Defendant's attorney noted that, in September 2000, defendant's probation for a Class A misdemeanor ended successfully. The judge stated, "All right. Maybe I should have said specifically felony probation. Under the circumstances–I'll tell you what. I had better err on the side of leniency, and I will modify the sentence to be six years ***."

¶ 7    The trial court modified the sentence and imposed the DNA fee and other assessments, which we shall detail in discussing defendant's third claim of error. Defendant timely appealed.

¶ 8    On appeal, defendant contends first that he is entitled to be resentenced, because the trial judge's sentencing decision appears to have been tainted by the erroneous belief that defendant was eligible for an extended-term sentence. Defendant concedes that he forfeited this issue by failing to raise it in the trial court (see *People v. Myrieckes*, 315 Ill. App. 3d 478,

483 (2000)), but he notes that we may consider it under the plain-error rule (see *id.*). We therefore consider the merits of defendant's claim.

¶ 9 Defendant relies on the colloquy that we have quoted from the proceedings on his motion to reconsider the sentence. He argues that (1) the judge's remarks prove that he imposed the sentence under the mistaken impression that defendant was eligible for an extended-term sentence;[1] and (2) because the judge's mistake might have influenced his choice of sentence, defendant is entitled to resentencing. For the following reasons, we disagree.

¶ 10 We ordinarily presume that the trial judge knew and followed the law unless the record indicates otherwise. *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996). Defendant must affirmatively demonstrate otherwise. See *Myrieckes*, 315 Ill. App. 3d at 483. Defendant has not overcome this presumption. We note that nothing in the record of the sentencing hearing itself, or anything preceding the hearing, suggests that the trial judge believed that defendant was eligible for extended-term sentencing. Indeed, the indications are to the contrary. At the sentencing hearing, the prosecutor stated that he did *not* believe that defendant was eligible for an extended-term sentence. The judge did not disagree. In pronouncing sentence, he did not discuss whether defendant might be eligible for, or deserve, an extended-term sentence. Instead, the judge emphasized proper factors, such as defendant's substantial criminal record and the seriousness of his offense. The sentencing hearing itself does not support defendant's claim and, indeed, tends to rebut it.

¶ 11 Nonetheless, defendant relies on the judge's comments six days after the sentencing hearing to prove the judge's earlier state of mind. Defendant seizes on the comments, "You know why I gave him the maximum? So I wouldn't have given him an extended term because he deserves it" and "You're sure?" (in response to defendant's attorney's assertion that an extended-term sentence was unavailable), as proof that the judge had been laboring under a misapprehension all along. We conclude that these remarks are, at most, inconclusive, especially when considered in context.

¶ 12 The first quoted comment is ambiguous; it could be taken to mean that the judge imposed the maximum nonextended term because he had had no authority to impose an extended-term sentence–as much as defendant in theory "deserved it." The second comment does tend to show that, at the hearing on the motion to reconsider the sentence, the judge was uncertain whether defendant was eligible for an extended-term sentence, or that, at that time, he might have thought so. However, we cannot read that possibility back into the sentencing hearing itself, especially as the judge was then specifically advised to the contrary by the prosecutor. Moreover, defendant ignores that, in response to the judge's query, defendant's attorney stated that, as a matter of simple fact, an extended-term sentence was unavailable. Further,

---

[1]Defendant would have been eligible for an extended-term sentence if he had been previously convicted of a Class 2 or greater felony and his conviction here had occurred within 10 years of the previous felony, excluding time spent in custody, and the charges were separately brought and arose out of different series of acts. 730 ILCS 5/5-5-3.2(b)(1) (West 2010). The parties agree that defendant was not eligible under this test and that no other ground for extended-term sentencing was available.

after reviewing defendant's record, the judge reduced his sentence by a year. In sum, defendant has not overcome the presumption that the judge knew the law and applied it correctly.

¶ 13	The cases on which defendant relies are distinguishable. In *Myrieckes*, at the sentencing hearing, the trial judge explicitly misstated the law in stating what would make the defendant eligible for an extended-term sentence. *Id.* at 485. In *People v. Hurley*, 277 Ill. App. 3d 684 (1996), at the sentencing hearing, the trial judge mistakenly stated that the defendant's prior conviction of murder made him eligible for an extended-term sentence; the State and the defendant's attorney agreed; and the State sought an extended-term sentence. *Id.* at 686-87. These cases (and others that defendant cites) are so dissimilar to the present case as to be unpersuasive.

¶ 14	We turn to defendant's second claim of error: that the DNA analysis fee must be vacated because defendant was already assessed the same fee in an earlier case. The State confesses error, and we agree with the parties. Under section 5-4-3(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4-3(a) (West 2010)), any person convicted of a felony in Illinois must submit a DNA sample to the Department of State Police (DSP), to be analyzed and catalogued in a database. The person providing the sample must pay a fee of $200. 730 ILCS 5/5-4-3(j) (West 2010). However, the fee may be assessed only once against an individual, and therefore it may not be assessed against a defendant whose DNA is already in the database per section 5-4-3(a) of the Code. *People v. Marshall*, 242 Ill. 2d 285, 296-97 (2011). Here, defendant has submitted a report from the DSP showing that, in 2004, in connection with a conviction, defendant's DNA was collected and entered into the database. We take judicial notice of the report (see *People v. Grayer*, 403 Ill. App. 3d 797, 799 (2010), *abrogated on other grounds*, *Marshall*, 242 Ill. 2d at 302), and we vacate the DNA fee.

¶ 15	We turn to defendant's final claim of error: that he is entitled to credit against various assessments. Under section 110-14(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14(a) (West 2010)), any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied is entitled, upon application, to a credit of $5 per day of presentencing incarceration, with the credit not to exceed the amount of the fine. Defendant was in custody for 282 days before sentencing and is thus entitled to a credit against any fine under section 110-14(a).

¶ 16	The parties agree that the following assessments are fines that are satisfied by the credit: (1) the $5 Children's Advocacy Center fee (55 ILCS 5/5-1101(f-5) (West 2010)) (see *People v. Jones*, 397 Ill. App. 3d 651, 660-61 (2009)); (2) the $5 drug court fee (55 ILCS 5/5-1101(f) (West 2010)) (see *People v. Sulton*, 395 Ill. App. 3d 186, 191-93 (2009)); (3) the $10 specialty court fee (55 ILCS 5/1101(d-5) (West 2010)) (see *People v. Graves*, 235 Ill. 2d 244, 255 (2009)); (4) the $12 State Police operations fee (705 ILCS 105/27.3a(1.5) (West 2010)) (see *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31); and (5) the $30 charge, distributed in equal shares to the State Police Services Fund, the Lake County State's Attorney's office, and the Circuit Court Clerk Operation and Administrative Fund, per section 5-9-1.17(a) of the Code (730 ILCS 5/5-9-1.17(a) (West 2010) (describing charge as "an additional fine of $30 to be imposed upon a plea of guilty or finding of guilty resulting in a judgment of conviction")). We agree with the parties, and we modify the judgment to show that these

charges have been satisfied.

¶ 17    Defendant contends further that the $50 charge imposed by Lake County under section 5-1101(c) of the Counties Code (55 ILCS 5/5-1101(c) (West 2010))[2] is a fine. The provision reads:

"A county board may enact by ordinance or resolution the following fees:

* * *

(c) A fee to be paid by the defendant on a judgment of guilty or a grant of supervision, as follows:

(1) for a felony, $50;

(2) for a class A misdemeanor, $25;

(3) for a class B or class C misdemeanor, $15;

(4) for a petty offense, $10;

(5) for a business offense, $10." *Id.*

Defendant contends that the $50 charge is a fine because it is essentially punitive and not compensatory. We agree.

¶ 18    In *Graves*, the defendant, who was convicted of possessing a stolen motor vehicle, was assessed two charges under section 5-1101 of the Counties Code–a " 'fee' " used to finance the county mental health court, the county drug court, or both (*Graves*, 235 Ill. 2d at 248 (quoting 55 ILCS 5/1101(d-5) (West 2006))) and another " 'fee' " to be deposited into an account used to operate a " 'youth court[ ] or other youth diversion program' " (*id.* (quoting 55 ILCS 5/1101(e) (West 2006))). He contended that both "fees" were actually fines subject to certain due process limitations. *Id.* at 248-49. The supreme court agreed.

¶ 19    The court drew on its opinion in *People v. Jones*, 223 Ill. 2d 569 (2006). There, the court held that a statutory "fee" assessed against convicted defendants and deposited into a fund for research into spinal-cord injury (730 ILCS 5/5-9-1.1(c) (West 2004)) was actually a fine. *Jones*, 223 Ill. 2d at 599. The court explained that the statutory label was by no means dispositive: the crucial considerations were that (1) the charge was imposed only after a conviction of a crime (*id.* at 600); (2) the charge was listed under an article of the Code entitled " 'Fines' " (*id.*); (3) the charge was payable to the state treasury (*id.*); and (4) "the most important fact, that this charge does not seek to compensate the state for any costs incurred as the result of prosecuting the defendant. This is the *central* characteristic [that] separates a fee from a fine" (emphasis in original) (*id.*). Because the "fee" at issue met these criteria, it was a fine, not a fee, even though the amount did not vary with the severity of the underlying criminal conduct. *Id.* at 600-01.

¶ 20    *Graves* applied *Jones* to hold that the two charges at issue, both assessed under the

[2]The parties state that the charge was assessed partially under subsection (a) (55 ILCS 5/5-1101(a) (West 2010)) as well as partially under subsection (c) of section 5-1101 of the Counties Code. However, subsection (a) applies to traffic offenses only and authorizes the imposition of a charge between $5 and $30. Subsection (c) authorizes a $50 charge for "a felony" (55 ILCS 5/5-1101(c) (West 2010)), which is what the trial court assessed here.

section of the Counties Code at issue here, were fines, not fees. The court explained that neither the mental health court "fee" nor the youth court "fee" sought to compensate the State for any costs incurred in prosecuting the defendant. *Graves*, 235 Ill. 2d at 251. Further, both charges were exacted only upon a criminal conviction and, although payable to the county rather than to the state treasury, they furthered "the state's interest in financing the court system." *Id.* at 252. Responding to the defendant's argument that counties lacked authority to impose fines, the court continued:

> "[S]ection 5-1101 of the Counties Code also sets forth 'fines and penalties,' although they are labeled 'fees to finance court system.' 55 ILCS 5/5-1101 (West 2006). In addition to the two subsections under which fines were imposed in this case, section 5-1101 also authorizes monetary penalties to be paid by a defendant on a judgment of guilty or a grant of supervision for violation of certain sections of the Illinois Vehicle Code or of the Unified Code of Corrections. See *55 ILCS 5/5-1101(a), (c), (d)* (West 2006)." (Emphasis added.) *Id.* at 253.

¶ 21    *Graves* disposes of defendant's claim of error. Not only is the assessment under section 5-1101(c) of the Counties Code specifically called a fine in *Graves*, but it meets the criteria of *Graves* and *Jones* for a fine. The assessment is payable only upon a conviction of a criminal offense. It is authorized in order to help "finance [the] court system." 55 ILCS 5/5-1101 (West 2010). Most important, the assessment is not intended or geared to compensate the State (or the county) for the cost of prosecuting a defendant. A defendant is charged a flat amount depending on the classification of the severity of his offense. The assessment is not explicitly tied to, and bears no inherent relationship to, the actual expenses involved in prosecuting the defendant, *e.g.*, the charges, the preliminary hearing, or various court services (see *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006)). Finally, although an assessment need not vary with the severity of the offense in order to be a fine rather than a fee (*Jones*, 223 Ill. 2d at 601), that the amount of the assessment is correlated directly with the severity of the offense shows that the assessment is punitive and not compensatory. A felony is not necessarily twice as expensive to prosecute as a misdemeanor, but it *is* inherently more serious in the eyes of the law.

¶ 22    We hold that defendant's prison sentence must be affirmed. We also hold that the $200 DNA analysis fee must be vacated and that defendant is entitled to a total credit of $112, satisfying the Children's Advocacy Center fee; the drug court fee; the specialty court fee; the State Police operations fee; the fee per section 5-9-1.17(a) of the Code; and the charge assessed under section 5-1101(c) of the Counties Code. We modify the judgment accordingly.

¶ 23    The judgment of the circuit court of Lake County is affirmed as modified in part and vacated in part.

¶ 24    Affirmed as modified in part and vacated in part.