# Illinois Official Reports

## Appellate Court

---

*People v. Skillom*, 2017 IL App (2d) 150681

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARKIE L. SKILLOM, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0681 |
| Filed | March 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CF-2453; the Hon. George Bridges, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Thomas A. Lilien and Erin S. Johnson, of State Appellate Defender's Office, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Sally Ann Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Birkett and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Markie L. Skillom, appeals from the denial of his motion to withdraw his plea of guilty to aggravated robbery (720 ILCS 5/18-5(a) (West 2010)). He raises two issues on appeal: (1) whether the trial court erred in denying his motion to withdraw his plea without first appointing new counsel to represent him on his claim of ineffective assistance of counsel and (2) whether he is entitled to a credit of $5 per day spent in presentencing custody against $95.71 in certain fines. For the reasons that follow, we find that although the trial court erred in failing to inquire into defendant's ineffective-assistance claim in a neutral and nonadversarial proceeding, the error was harmless. We also find that defendant is entitled to a $2830 credit for time spent in presentencing custody, which is sufficient to offset the fines at issue. Accordingly, we modify the trial court's sentencing order to reflect that these fines have been satisfied, and we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On August 17, 2011, defendant was charged with aggravated vehicular hijacking (720 ILCS 5/18-4(a)(1) (West 2010)), vehicular hijacking (720 ILCS 5/18-3(a) (West 2010)), aggravated robbery (720 ILCS 5/18-5(a) (West 2010)), unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2010)), and robbery (720 ILCS 5/18-1(a) (West 2010)).

¶ 4    On August 6, 2012, defendant pleaded guilty to aggravated robbery, a Class 1 felony. At the outset of the plea hearing, the following colloquy occurred:

"[DEFENSE COUNSEL]: Your Honor, I believe we have a negotiation to present.

[THE STATE]: Your Honor, the defendant would enter an open plea to Count 3, which is a Class 1 aggravated robbery. The defendant does have two prior Class 2s in his background. He was arraigned on that and advised of that, so he will receive a Class X sentence. We didn't do a cost sheet on this because I assume that when he gets sentenced is when we do that.

[DEFENSE COUNSEL]: Your Honor, [defendant] and I have met, both Saturday and early this morning, to discuss the case. The State has indicated it's ready, that it had all of its witnesses. So he and I also this morning have discussed the Class X sentencing aspect of the case.

THE COURT: You're [defendant]; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: [Defendant], did you hear what was just represented to the Court as being the negotiation?

THE DEFENDANT: Yes.

THE COURT: And that is the negotiation that I was just advised of, is you're pleading guilty to Count 3, aggravated robbery, a Class 1 felony, but, however, you are to be sentenced as a Class X felon for this offense. And is that your understanding of what you're pleading guilty to?

THE DEFENDANT: Yes.

* * *

[DEFENSE COUNSEL]: Your Honor, [defendant] did have a question. I know the Court advised him—not about the waiver of trial, per se, but I know the Court advised him about being a Class X case. But I think I want it to be clear that [defendant] and I—and your Honor, if you have any questions—have discussed the fact that, with a Class X sentence, it is not a probabtionable [*sic*] or drug court type of offense.

THE COURT: So I don't understand. What is the question?

[DEFENSE COUNSEL]: Judge, just so I understand it, since this is a Class X sentence, it is not probationable. I think he was advised of that, but he was asking me a little bit about that. So I don't know if the Court has any more questions—

THE COURT: I want to make sure I understand. What is the question? Is it a probationable offense?

[DEFENSE COUNSEL]: Yes.

THE COURT: That's your question, [defendant]?

THE DEFENDANT: Yeah. I understand it was dropped down to a Class 1, which is 4 to 15, and I was asking about that, because that's what he had told me earlier. But now he's saying that, because of the background, it stays a Class X or whatever. That's what I'm trying to understand.

THE COURT: No. No.

[DEFENSE COUNSEL]: And when [defendant] says now, he doesn't mean the bench. He means when we were talking in the box earlier.

THE COURT: Okay.

[DEFENSE COUNSEL]: He's not hearing now, for the first time, at the bench—

THE DEFENDANT: Right. Right.

THE COURT: No. The fact that you have—what I've been told—I haven't gotten to that part yet. Part of the factual basis is that you have two prior Class 2s or greater. If that's true, if you plead guilty to the Class 1 or a Class 2 or greater, you must be sentenced as a Class X offender. And that's a minimum of 6 to 30 years. And so that being the case, the—if that's your question—

THE DEFENDANT: Yes, sir. That was my question.

THE COURT: Yes. Even though it is a Class 1 offense, you are sentenced as a Class X offender. Do you have any other questions?

THE DEFENDANT: No, sir."

Later in the hearing, the court asked defendant if he wished "to plead guilty to the Class 1 felony of aggravated robbery," and the following colloquy occurred:

"THE DEFENDANT: Yes, sir.

THE COURT: As a Class 1 felony, this is an offense where you could be sentenced to the Department of Corrections from 4 until 15 years, and if you were eligible for an extended term sentence, from 15 to 30 years. *** Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand, however, [defendant], that because you have two prior Class 2 or greater offenses, that if you are convicted of this offense or pled guilty to this offense, it would require that you be sentenced as a Class X offender? And

- 3 -

as a Class X offender, this is a sentence where you could be sentenced to the Department of Corrections from 6 until 30 years ***. *** Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: This offense is nonprobationable as a Class X offense, and it would require you to serve the minimum of six years in the Department of Corrections and to serve the minimum three years mandatory supervised release period of time. And do you understand that?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: You also understand that the minimum you could be sentenced to for this offense is six years in the Department of Corrections. And you understand that?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: Has anyone promised you any specific sentence that you would receive by pleading guilty to this charge?

THE DEFENDANT: No, sir."

¶ 5 Ten days later, on August 16, 2012, defendant moved to withdraw his plea. According to the motion, "[d]efendant has notified counsel that he would like to withdraw his plea because he was not fully aware of the Class X sentencing aspect of the negotiation."

¶ 6 A hearing on the motion to withdraw took place on November 8, 2012. At the outset of the hearing, defense counsel stated:

"[I]t is a little bit difficult right now for me because to some extent [defendant] is saying that I didn't advise him correctly or thoroughly enough, and I don't know if the Court wants to talk to [defendant] about that. I am telling you what he is telling me which is that he did not really understand this benefit or did not understand that this was not going to be a sentencing benefit to him, and he has repeatedly told me and consistently told me that he did not understand that and that is why I filed the motion within 30 days. *** I am going to ask if the Court ask [*sic*] [defendant] about some of these questions about why [*sic*] he understood."

The court responded: "We are in your case so if you wish to call him as a witness you may call him."

¶ 7 Thereafter, defense counsel questioned defendant. Defendant testified that, on the morning of his guilty plea, defense counsel told him, " 'Good news. They dropped the case down.' " Counsel also told him that he would be eligible for probation or drug court. Counsel did not know about defendant's background.

¶ 8 The State cross-examined defendant. Defendant acknowledged that the State advised the court during the plea hearing that defendant had two prior Class 2 convictions and that he would receive a Class X sentence.

¶ 9 On redirect examination, defendant testified that he "understood something different." He stated: "It was like when I was in the back and you [defense counsel] came and talked to me and when I came to the courtroom it was a whole different thing. And I didn't understand it from that point on."

¶ 10    The court questioned both defendant and defense counsel. The court asked defendant whether counsel told him that he could get probation. Defendant responded:

"I remember exactly what he said. He said that—he said, 'Good news, Markie.' I said, 'What?' He said, 'They decided to give you what you want. They are dropping it down.' I said, 'Yeah, what?' He said, 'Yeah, to a Class One. Now you can ask the Judge for probation or drug court.' I was like, 'Great.' "

The court asked counsel whether he advised defendant that he could ask for probation. Counsel stated:

"No. By the time we approached the bench I told [defendant] that it would not be a probationable offense. I probably did say the words 'good news.' I probably did say it was going to be a reduction in class. I am sure I considered that to be something for [defendant]. But I did not advise it was probationable."

¶ 11    The court asked defense counsel if he had any more witnesses to call. Counsel stated that he did not but that he wanted to argue further. He was allowed to do so and emphasized how quickly after the plea defendant contacted him to say that "it is very clear that he did not understand that this is not really a benefit to him." The State was given the opportunity to respond. Quoting extensively from the transcript of the plea hearing, the State argued that defendant could not establish that any mistaken impression he had was justified. The court denied the motion.

¶ 12    A sentencing hearing took place on January 9, 2013. At the hearing, the State tendered docket sheets showing that defendant had previously been convicted in Cook County of possession of a stolen motor vehicle (in 1998) and burglary (in 1999). The State asked that, based on the prior convictions, defendant be sentenced as a Class X offender under section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2010)). Defense counsel argued in response:

"It is the Defense's formal position that [defendant] is not Class X eligible, that based on the certified conviction that the Court has received based on my review of that as well as the certified conviction records in the other case where it's sort of reflected upon that we believe he is not Class X eligible.

We believe that this is a Class [1], probationable Class [1] felony which leads to probation or 4 to 15 years in prison."

The court agreed that the documents presented were not clear as to the specific offenses that defendant had been convicted of. The court continued the hearing, directing the State to obtain certified copies of orders showing the actual charges and the sentences.

¶ 13    The sentencing hearing continued on February 14, 2013, at which time the State presented certified documents showing that defendant had previous convictions of possession of a stolen motor vehicle and burglary. Defense counsel continued to maintain that the conviction of possession of a stolen motor vehicle was not a Class 2 or greater felony. He stated: "I think this could be a Class 3 that he is being extended on. It could be a mistake by the court." The trial court disagreed. It sentenced defendant as a Class X offender to 12 years in prison and imposed various fees, fines, and costs.

¶ 14    Following the denial of his motion for reconsideration of his sentence, defendant appealed. On April 2, 2015, we granted defendant's unopposed motion and remanded the case to the trial court with instructions that defendant be allowed to file a new postplea motion along with a

certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Dec. 11, 2014). *People v. Skillom*, No. 2-13-0212 (Apr. 2, 2015) (minute order).

¶ 15 On remand, defendant filed an amended motion to withdraw his plea, again asserting that "[he] has notified counsel that he would like to withdraw his plea because he was not fully aware of the Class X sentencing aspect of the negotiation." He also filed a motion for reconsideration of his sentence.

¶ 16 A hearing took place on July 1, 2015. Defense counsel first argued the motion for reconsideration of the sentence. Counsel maintained that the trial court did not adequately consider all the factors in mitigation. In addition, counsel argued that defendant was not eligible for Class X sentencing and asked the trial court to reconsider that issue. The trial court denied the motion for reconsideration of the sentence.

¶ 17 Defense counsel next argued the motion to withdraw the plea. Counsel began by stating:

> "[O]n that motion, I don't know if the court has questions for [defendant]. I was his attorney at that time. He still desires to withdraw his plea of guilty. He said he was not properly advised of Class X sentencing. He thought he was going over on the Class 1. And so, Judge, to some extent my representation of him is a bit at issue."

The court asked counsel if he would like to call defendant and present testimony. Thereafter, defendant testified that he believed that he would not be sentenced as a Class X offender. When counsel asked what this belief was based on, defendant stated: "It was based on you telling me that it was dropped down. And you said that's good news. They dropped it down to a Class 1, and that's 4 to 15 which is probationable."

¶ 18 The State was then allowed to cross-examine defendant. It asked generally whether defendant had been given opportunities to meet with counsel while in custody and whether defendant was present in court at his arraignment.

¶ 19 The parties were allowed to make final arguments on the motion to withdraw. Defense counsel argued that defendant testified credibly that he thought he would be eligible for probation. Following defense counsel's argument, defendant asked the court if he could say something. The court did not respond and instead directed the State to proceed with its argument. The State argued that defendant was properly admonished at the time of his plea that he was subject to Class X sentencing.

¶ 20 The court denied the motion to withdraw, finding that the court admonished defendant at the time of the plea that, although he was pleading guilty to a Class 1 offense, he would be sentenced as a Class X offender based on his prior convictions.

¶ 21 Defendant timely appealed.

## II. ANALYSIS

¶ 23 In his initial brief, defendant argues that it is clear from the testimony at the hearing on the motion to withdraw his plea that there was a *per se* conflict between defendant and defense counsel and that therefore the trial court erred in failing to appoint new counsel to represent him on the motion. In response, the State argues that the trial court conducted an extensive preliminary inquiry, as required under *People v. Krankel*, 102 Ill. 2d 181 (1984), and properly determined that defendant's claim of ineffectiveness was without merit. In reply, defendant argues that the trial court did not conduct a proper inquiry into defendant's claim, forced

defense counsel to argue his own ineffectiveness, and improperly allowed the State to take an adversarial role in the process.

¶ 24    The issue is whether the trial court conducted a proper preliminary inquiry into defendant's claim of ineffective assistance of counsel. We note that defendant forfeited any argument concerning the propriety of the inquiry by failing to raise it in his initial brief. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). However, the State forfeited any argument concerning defendant's forfeiture by failing to raise it. Thus, we will address the issue. See *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003) (State can forfeit forfeiture).

¶ 25    When a defendant brings a *pro se* posttrial claim that trial counsel was ineffective, the trial court must inquire adequately into the claim and, under certain circumstances, must appoint new counsel to argue the claim. *Krankel*, 102 Ill. 2d at 187-89; *People v. Fields*, 2013 IL App (2d) 120945, ¶ 38. New counsel is not automatically required merely because the defendant presents a *pro se* posttrial claim that his counsel was ineffective. *People v. Moore*, 207 Ill. 2d 68, 77 (2003); *Fields*, 2013 IL App (2d) 120945, ¶ 38. Instead, the trial court must first examine the factual basis of the claim. *Moore*, 207 Ill. 2d at 77-78; *Fields*, 2013 IL App (2d) 120945, ¶ 38. The trial court may conduct a preliminary examination by (1) questioning trial counsel about the facts and circumstances surrounding the defendant's allegations, (2) requesting more specific information from the defendant, or (3) relying on its own knowledge of counsel's performance at trial and any insufficiency of the defendant's allegations on their face. *Moore*, 207 Ill. 2d at 78-79; *Fields*, 2013 IL App (2d) 120945, ¶ 39. If, after a preliminary investigation into the allegations, the trial court concludes that the defendant's claim lacks merit or pertains only to matters of trial strategy, the court may deny the claim. *Moore*, 207 Ill. 2d at 78; *Fields*, 2013 IL App (2d) 120945, ¶ 38. If the defendant's allegations show possible neglect of the case, the trial court should appoint new counsel to argue the defendant's claim. *Moore*, 207 Ill. 2d at 78; *Fields*, 2013 IL App (2d) 120945, ¶ 38. We review *de novo* the manner in which the trial court conducted its *Krankel* hearing. *Fields*, 2013 IL App (2d) 120945, ¶ 39.

¶ 26    In *People v. Jolly*, 2014 IL 117142, the supreme court found that the trial court committed reversible error when it permitted the State to participate in an adversarial fashion during the preliminary *Krankel* inquiry. The court emphasized that "a preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding" and that the State's participation, if any, should be *de minimis*. *Id.* ¶ 38. The court stated: "A record produced at a preliminary *Krankel* inquiry with one-sided adversarial testing cannot reveal, in an objective and neutral fashion, whether the circuit court properly decided that a defendant is not entitled to new counsel." *Id.* ¶ 39. The court declined the State's invitation to find the error harmless. *Id.* ¶¶ 40-44. The court noted that the State's participation during the inquiry "effectively thwarted" the creation of an objective record to review the defendant's allegations. *Id.* ¶ 46.

¶ 27    Here, there is no question that the trial court erred in the manner in which it inquired into defendant's claim, as it did not do so in a "neutral and nonadversarial proceeding." *Id.* ¶ 38. At the hearing on defendant's initial motion to withdraw his plea, when defense counsel brought defendant's claim to the trial court's attention, counsel was permitted to question defendant, and the State was permitted to cross-examine him. Thereafter, although the trial court did ask a few questions of defendant and defense counsel, the court subsequently directed the parties to make closing arguments. A similar procedure was followed on remand at the hearing on defendant's amended motion to withdraw his plea. Defense counsel began by telling the court

that his representation was at issue and inquired whether the court wanted to question defendant. Again, rather than asking defendant or counsel about the facts and circumstances underlying defendant's claim, the court asked counsel if he would like to call defendant and present testimony. Thereafter, defendant again testified, and the State was again allowed to cross-examine him. When defendant asked the court if he could say something during the parties' final arguments, the court did not respond.

¶ 28    Nevertheless, the State argues, as it did in *Jolly*, that any error that occurred during the trial court's inquiry into defendant's claim was harmless. See *Moore*, 207 Ill. 2d at 80 ("A trial court's failure to appoint new counsel to argue a defendant's *pro se* posttrial motion claiming ineffective assistance of counsel can be harmless beyond a reasonable doubt."). We note that, although the *Jolly* court declined to find the error in that case harmless, it did not hold that errors committed during a preliminary *Krankel* hearing could never be subject to harmless-error review. Indeed, the supreme court specifically declined to hold that the error in that case constituted structural error. *Jolly*, 2014 IL 117142, ¶ 45. If an error is not structural, then, by definition, it is subject to harmless-error review. See *Neder v. United States*, 527 U.S. 1, 7-8 (1999). Accordingly, we will consider whether the error here was harmless.

¶ 29    Defendant's sole allegation of ineffectiveness was that defense counsel gave defendant incorrect advice as to whether the offense was probationable. In rejecting this allegation, the trial court based its decision solely on its recollection that, during the guilty plea hearing, it fully admonished defendant that he was subject to Class X sentencing, which had a mandatory minimum sentence of six years and was nonprobationable. A review of the transcript from the guilty plea hearing shows that defendant was told six times that he was subject to Class X sentencing. It shows that defendant was told three times that he faced a mandatory minimum sentence of six years. It shows that defendant was specifically told that the offense was nonprobationable, and it shows that he indicated to the court that he understood. Given the court's exhaustive admonishments and defendant's expressed understanding of the same, any prejudice resulting from counsel's alleged incorrect advice was cured. See *People v. Valdez*, 2016 IL 119860, ¶ 31 ("It is well established that admonishments by the circuit court can cure prejudice to a defendant resulting from counsel's incorrect advice."); *People v. Ramirez*, 162 Ill. 2d 235, 242-43 (1994) (where the defendant was properly admonished by the trial court, the defendant could not show that he pleaded guilty in reliance on counsel's alleged misrepresentations that he would receive probation); *People v. Jones*, 144 Ill. 2d 242, 263 (1991) (trial court's thorough questioning of the defendant as to whether he understood the consequences of his plea contradicted the defendant's claim that he pleaded guilty based on counsel's promise that he would not receive a death sentence).

¶ 30    The nature of defendant's ineffectiveness claim and the objective record that forecloses it distinguish this case from *Jolly,* where several of the defendant's ineffectiveness claims could not be rebutted by the objective record: for instance, his claim that counsel failed to obtain his consent before waiving his right to a speedy trial, his claim that counsel failed to provide him access to discovery materials, and his claim that counsel failed to discuss trial strategy with him. See *Jolly*, 2014 IL 117142, ¶ 10. It is clear that the *Jolly* court's refusal to find the error harmless was based on a concern not present here, *i.e.*, the lack of an objective record that foreclosed the defendant's claims. Accordingly, as defendant's claim here is rebutted by the objective record, the error committed during the inquiry into that claim was harmless.

¶ 31    Last, defendant argues that he is entitled to monetary credit against certain fines imposed. Under section 110-14(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-14(a) (West 2010)), a defendant who is incarcerated on a bailable offense and does not supply bail, and against whom a fine is levied in connection with the offense, shall upon his application be allowed a credit of $5 for each day that he is incarcerated. An application for monetary credit under section 110-14(a) of the Code may be raised for the first time on appeal. *People v. Woodard*, 175 Ill. 2d 435, 457 (1997).

¶ 32    The State concedes that the following fines that were imposed upon defendant are subject to credit under section 110-14(a) of the Code: (1) the $10 specialty court charge (55 ILCS 5/5-1101(d-5) (West 2010)) (see *People v. Smith*, 2013 IL App (2d) 120691, ¶ 16); (2) the $4.75 drug court charge (55 ILCS 5/5-1101(f) (West 2010)) (see *Smith*, 2013 IL App (2d) 120691, ¶ 16); (3) the $50 county assessment (55 ILCS 5/5-1101(c) (West 2010))[1] (see *Smith*, 2013 IL App (2d) 120691, ¶ 17); (4) the $12 state police operations charge (705 ILCS 105/27.3a(1.5) (West 2010)) (see *Smith*, 2013 IL App (2d) 120691, ¶ 16); (5) the $10 state police service charge (730 ILCS 5/5-9-1.17(b) (West 2010)) (see *Smith*, 2013 IL App (2d) 120691, ¶ 16); and (6) the $5 Children's Advocacy Center charge (55 ILCS 5/5-1101(f-5) (West 2010)) (see *Smith*, 2013 IL App (2d) 120691, ¶ 16). As defendant was incarcerated for 566 days before sentencing, he is entitled to a $2830 credit against these fines. Therefore, under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967), we modify the trial court's sentencing order to reflect that these fines, totaling $91.75, are satisfied by the $2830 credit.

¶ 33                                    III. CONCLUSION

¶ 34    For the reasons stated, the judgment of the circuit court of Lake County is affirmed as modified. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 35    Affirmed as modified.

---

[1]The sentencing order indicates that the charge was assessed under both subsection (a) and subsection (c) of section 5-1101 of the Counties Code. However, subsection (a) applies to traffic offenses only and authorizes the imposition of a charge between $5 and $30 (55 ILCS 5/5-1101(a) (West 2010)). Subsection (c) authorizes a $50 charge for "a felony" (55 ILCS 5/5-1101(c)(1) (West 2010)), which is what the trial court assessed here.