2022 IL App (1st) 190330-U

No. 1-19-0330

Order filed January 20, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 9359 |
| | ) | |
| MARK WARREN, | ) | Honorable |
| | ) | William T. O'Brien, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court erred in granting the State's motion to dismiss defendant's postconviction petition where the trial court had conducted an improper preliminary *Krankel* inquiry and, therefore, defendant made a substantial showing that his appellate counsel was ineffective for failing to raise the *Krankel* issue on direct appeal.

¶ 2     Defendant Mark Warren, who was convicted of burglary, appeals from the second-stage dismissal of his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, he contends that his petition made a substantial

showing that his appellate counsel rendered ineffective assistance on direct appeal by failing to raise a claim that he was denied a fair and adequate preliminary inquiry, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into his *pro se* claim of ineffective assistance of trial counsel. For the reasons that follow, we reverse and remand for third-stage postconviction proceedings.[1]

¶ 3    Defendant's conviction arose from the May 6, 2012, burglary of a car in Chicago. At defendant's November 14, 2012, bench trial, Chicago police officer Kevin Clenna testified that he and his partner, Officer Paul Bower, responded to a call at approximately 4:45 p.m. The call indicated that a black man wearing black clothing was pulling on car doors in the 500 or 600 block of Willow Street. As Clenna and Bower approached the intersection of Willow and Larrabee, they observed defendant, who matched the provided physical description, with his torso and hands inside the trunk of a vehicle. The officers drove past, made a U-turn, and returned to see defendant starting to close the trunk of the car.

¶ 4    Clenna approached defendant and asked him who the vehicle belonged to, and defendant responded, "I don't know." Upon patting defendant down, the officers recovered a small gift card or debit card, a coin holder containing coins, and a candy bar. They also recovered a white plastic bag from defendant's hand that contained a sweatshirt. Officer Bower ran the car's license plates to determine and seek out the vehicle's owner.

¶ 5    Edgar Barnett, the owner of the car, testified that he arrived at the scene shortly before 5 p.m. The officers showed him a coin holder with coins, a candy bar, "a little discount card," and a sweatshirt. Barnett recognized all of the items. The sweatshirt was in the trunk of Barnett's car

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

and the coin holder, candy bar, and gift card were in the front seat. Barnett told the officers he did not recognize defendant. He denied giving defendant permission to enter his car or take any of the recovered items.

¶ 6    The trial court found defendant guilty of burglary.

¶ 7    On December 10, 2012, defense counsel filed a motion for a new trial, and the case was called for posttrial motions and sentencing. After defense counsel stated she was resting on the motion she had filed and the assistant state's attorney (ASA) asked the court to deny it, defendant interjected that he had filed a *pro se* posttrial motion. Defendant tendered a copy of his *pro se* motion, asserting that he had filed it a week prior. In the *pro se* motion, defendant alleged that his trial counsel was ineffective for failing to (1) move to suppress his statement; (2) investigate and take pictures and fingerprints of the crime scene; (3) "order the O.E.M.C. dispatch 911 call"; (4) locate and subpoena crucial witnesses; (5) follow up on a preservation order; (6) call Officer Bower to testify; and (7) secure his speedy trial rights. The trial court passed the case to read the *pro se* motion, which was file-stamped that day.

¶ 8    When the case was re-called later that day, the court asked defendant what he had to say about his motion. After summarizing the claims in his *pro se* motion, defendant stated that when he was arrested, he was with two friends, Theresa Phillips and Marvin Warfield. He told the court he did not know Phillips's address, but he provided one for Warfield. According to defendant, he told counsel about these witnesses, who would have testified that he was arrested on North Avenue, not on Willow Street as testified to by Officer Clenna. Defendant also stated that counsel failed to call Officer Bower, which would have allowed the defense to show that Bower (at the preliminary hearing) and Clenna (at trial) made contradictory assertions regarding whether they initially

spotted defendant inside the vehicle or reaching into the trunk. Defendant also asserted that he did not match the description given in the initial 911 call because he did not walk with a limp and was not wearing a black hat or a black jacket.

¶ 9    At this point, the trial court asked defense counsel what she wished to say "about not contacting his witnesses." Counsel answered that defendant had told her he had witnesses, but that when she spoke with him on three different court dates, he did not have their names or addresses. She stated that she consistently asked defendant for witness information, but he never gave her names. Defendant interrupted, asking if he could object because what counsel was saying was not true. The court answered, "No, sir. No, sir. Be quiet right now. I gave you a chance to talk."

¶ 10    The court then asked counsel about the allegation that she had failed to move to suppress defendant's statement. Counsel answered that there was no statement. The ASA interjected, "Judge, I'm looking at my notes. I don't think the State presented any statements," and the court stated, "I don't see any confession." After a discussion off the record, the following exchange occurred:

> "THE DEFENDANT: Your Honor, we just had trial. Your Honor, excuse me. He sat right there and told him when he drove up on the scene, he asked me [whose] car was this here. I guess wasn't nobody here—
>
> [DEFENSE COUNSEL]: You didn't confess.
>
> THE DEFENDANT: I didn't confess to what? What is you talking about? I'm telling you what they used. You saying they didn't use this—
>
> THE COURT: Will you be quiet.
>
> THE DEFENDANT: Yeah, okay. I be quiet, sir. Yes, I be quiet.

THE COURT: I got out—Officer: I got out of the car 4:45. I got it in quotes, 'I don't know.' So that's the question of [whose] car is this. He responded, I don't know. That's it.

[ASA]: Right.

THE COURT: I detained him. Ran the plate, patted him down, described what he was wearing, what he recovered off of him. There is no confession that he burglarized the car. None was introduced.

[ASA]: Okay. I didn't think so, Judge.

THE DEFENDANT: Your Honor, I'm saying that we were sitting here when I had trial, he said that when he drove up on the scene he asked me [whose] car that was.

THE COURT: Right. And you said, I don't know.

THE DEFENDANT: That's what I'm trying to explain to you. I didn't have no conversation with no police. That's what I'm saying to you 'cause no—about a car or anything about that vehicle. That's what I'm trying to explain to you. Why would I make that statement if I'm not even by a vehicle, sir?

THE COURT: Okay. All right."

¶ 11    The court moved on to the issue of the 911 call. Specifically, the court asked, "And then no 9-1-1 tape. Was there ever a preservation order?" The ASA responded in the negative. Defendant interjected that there was one, as reflected in the preliminary hearing transcript. After looking at that transcript, the ASA stated, "Right, Judge, there was one. I misspoke." The court set a date for the State to obtain a copy of the preservation order. The court then stated, "All right. *Krankel* hearing commenced and continued."

¶ 12    On January 28, 2013, the hearing resumed with defense counsel stating that the cause had been continued from the prior date. The ASA then summarized what happened on the prior date, stating that counsel's motion for a new trial was denied, and that defendant filed a *pro se* motion for a new trial alleging ineffective assistance of counsel. The ASA continued, "We began I believe a *Krankel* hearing. The defendant stated that the Public Defender did not call two witnesses and they didn't get the 911 tape event query. There is no 911 tape. I was able to get the 911 event query. At this time I'd tender it." Defense counsel responded she was acknowledging receipt of the event query. She then reiterated that defendant had not given her the names of witnesses prior to the posttrial proceedings. However, since the last court date, she searched "Theresa Phillips" and found over one hundred listings. She also searched "Marvin Warfield" and found five listings in Chicago, with one deceased and none at the address defendant gave the court.

¶ 13    The court asked, "So, what stage are we at; just refresh me; I am sorry." The ASA answered that "we had just started." He again recapped what happened on the prior date, summarizing that the un-called witnesses and the 911 tape were "two of [defendant's] major concerns." Defendant interjected that his major concern and "biggest beef" was counsel's failure to subpoena Officer Bower, since his preliminary hearing testimony conflicted with Officer Clenna's trial testimony regarding where in relation to the car they first saw defendant. The ASA responded, "And this was a bench trial, Judge, where officers did in fact testify, police officers, Judge." The court stated, "Okay."

¶ 14    The court then asked, "Anything else? What is the event query; what is that?" The ASA answered that he had just tendered the event query. The court passed the case so that defense counsel could review it. When the case was re-called, the court stated, "We had passed the case.

We're in the midst of a *Krankel* hearing, a *pro se Krankel* hearing ***. Is there anything in the event query?" Defense counsel answered that there was nothing in the event query that was not in the police reports.

¶ 15 The court then moved on to another of defendant's allegations, stating, "And I have on here 'failed to fingerprint the crime scene.' State, do you have any crime scene—was the car processed?" The ASA answered that an evidence technician took photographs, but the car was not processed for fingerprints.

¶ 16 The court returned to the topic of suppression of statements, saying that the only statement in its notes was when the police asked, "Whose car is this?" and defendant answered, "I don't know." Defense counsel and the ASA both confirmed that this was the only statement. The court asked defendant whether there was any other statement. Defendant confirmed there was not. He then queried whether he could ask the court a question. The court answered, "Not yet. I am just trying to flush out your motion, okay."

¶ 17 Next, the court addressed defendant's speedy trial claim. Defendant stated that in June or July of 2012, he asked the court about his right to a speedy trial and the court told him the only way a speedy trial would happen was if he proceeded *pro se*. The court said defendant's memory was accurate, and explained that this was so because defense counsel did not have "all the reports" and was not ready for trial. Defendant told the court that "this is the problem."

¶ 18 Defendant then asserted that counsel did not preserve the recording of the 911 call. The court stated that no recording of the call existed. Defendant argued that the recording was supposed to have been preserved and explained, "I am trying to find out what procedures do I have to take now because I'm saying I know they don't have it." The court responded, "So, do you think that

exonerates you because they don't have the [recording]?" Defendant answered that he thought the recording would have been "efficient" to his trial because he did not walk with a limp and was not wearing the clothes described during the 911 call.

¶ 19    The court asked defendant whether he wished to argue anything else. Defendant answered as follows:

> "I am just saying that, you know, I am trying to figure out where do I go from here. I'm saying it's better to have this tape; I'm not saying that I'm being exonerated. I'm just trying to get a fair trial here, your Honor. I'm just saying that I need all the evidence here for my trial, you know.
>
> All I'm saying is that, you know, that my witnesses, she's saying that she was contacting them and I gave her names and this, that, and the other. We never even talked until recently. I am talking about the day I went to trial we was back there. I'm just trying to, you know, tell you that I talked to my daughter the other night for the first time since I've been incarcerated, and she was supposed to get in contact with these people for me because I was telling them to get in contact with her before I come up here today, but it didn't happen."

¶ 20    The court asked defendant, "Anything else?" and defendant answered, "No, sir." The court then asked, "State, any argument?" In response, the ASA argued that defense counsel properly tried the case, that counsel could not find the witnesses, and the event query did not contain a description of the suspect. The ASA asserted that a preservation order "has to be filed within 30 days and that's before the case came into the courtroom, and it wasn't." The ASA further stated that the case had "gone by agreement all the way," and argued that he believed that "in the *Krankel*

hearing, that there has been no substantial evidence or no merit to the defendant's allegations." As such, the ASA asked that the trial court deny defendant's *pro se* motion.

¶ 21    The trial court indicated it had listened to the arguments of the parties, reviewed its notes of the trial, and reviewed the pleadings filed by defendant. It then stated that it was denying defendant's *pro se* motion for a new trial. Characterizing the case as "basically a caught-inside car burglary," the trial court summarized the trial evidence. The court noted that according to defense counsel, defendant first provided his potential witnesses' names during the posttrial proceedings, and found that once defendant did so, counsel "did a due diligence search on those two names." The court further found that defendant's statement was made in response to an on-view *Terry* stop investigatory question and that, therefore, any kind of motion to suppress the statement would have been denied. The court stated that it would have been reckless for counsel to have made a speedy trial demand without having all the reports; that the police had not fingerprinted the car and it had "never heard of" subsequent fingerprinting being done; that both defense counsel and the ASA indicated "there is nothing new in that 911"; and that Officer Bower's potential testimony would not have been impeaching of Officer Clenna. Finally, the court stated as follows:

"You know, the Court feels that the defendant did have a fair trial. He was well represented. I know the quality of this Public Defender's work. I find her to be diligent. I find her to be honest, hard-working. She presented the case. She vigorously cross-examined the witnesses presented in this case."

The trial court reiterated that it was denying the *pro se* motion for a new trial, as well as the posttrial motion filed by counsel.

¶ 22    At sentencing, the trial court found that defendant was required to be sentenced as a Class X offender based on his 11 prior felony convictions. The court imposed a term of 18 years in prison.

¶ 23    On direct appeal, defendant contended his sentence was excessive because it was manifestly disproportionate to the nature of his offense. He also contended that adjustments to the fines and fees order were required. We affirmed defendant's sentence, vacated a fine and a fee, and modified the fines and fees order to award him presentence credit to offset certain fines. *People v. Warren*, 2015 IL App (1st) 130952-U.

¶ 24    In 2013, while his direct appeal was pending, defendant filed a *pro se* petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)) challenging the constitutionality of the sentencing statute. The circuit court *sua sponte* dismissed defendant's petition. On appeal, we vacated and remanded for further proceedings, finding the circuit court's action was premature. *People v. Warren*, 2015 IL App (1st) 132977-U.

¶ 25    On remand, the circuit court granted the State's motion to dismiss. On appeal, we granted counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed. *People v. Warren*, No. 1-17-1261 (2020) (unpublished summary order pursuant to Illinois Supreme Court Rule 23(c)).

¶ 26    In April 2016, defendant filed a *pro se* postconviction petition. The *pro se* petition is not included in the record on appeal. On a date and for reasons not revealed by the record, the Office of the Cook County Public Defender was appointed to represent defendant.

¶ 27    On December 15, 2017, counsel filed a supplemental postconviction petition, setting forth a number of arguments. As relevant here, defendant alleged in the supplemental petition that the

trial court conducted an improper preliminary *Krankel* inquiry, and that his constitutional rights were violated because appellate counsel was ineffective for failing to raise the issue on direct appeal. Defendant contended that while the trial court started the *Krankel* inquiry correctly, it later turned the inquiry into an improper adversarial hearing where the court, the ASA, and defense counsel were on one side, and he stood alone on the other.

¶ 28    Defendant cited numerous instances of alleged impropriety during the preliminary *Krankel* inquiry. He asserted that, where the trial court's words and actions showed it considered the proceeding to be a full *Krankel* hearing, he should have been appointed counsel to represent him at that hearing. He argued there was a reasonable probability that had the issue been raised on direct appeal, this court would have ordered a new *Krankel* proceeding. As relief, defendant sought a new *Krankel* hearing with newly appointed counsel.

¶ 29    The State filed a motion to dismiss the *pro se* and supplemental postconviction petitions, and defendant filed a response. Following a hearing, the circuit court granted the State's motion to dismiss. Defendant filed a timely notice of appeal.

¶ 30    On appeal, defendant contends that his postconviction petition made a substantial showing that direct appeal counsel rendered ineffective assistance by failing to raise a claim that he was denied a fair and adequate *Krankel* hearing.

¶ 31    In cases not involving the death penalty, the Act provides a three-stage process for adjudicating petitions alleging that a conviction resulted from a constitutional violation. 725 ILCS 5/122-1 *et seq.* (West 2014); *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). The instant case involves the second stage, where defendants are represented by counsel and the State may file a motion to dismiss. *Hodges*, 234 Ill. 2d at 10-11. At this stage, all factual allegations that are not positively

rebutted by the record are accepted as true. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). The dismissal of a petition is warranted if its allegations, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). In other words, a defendant is entitled to proceed to a third-stage evidentiary hearing on his petition only if the allegations therein, supported by the trial record and affidavits or exhibits, make a substantial showing of a violation of constitutional rights. *Id.* at 381. Our review at the second stage is *de novo*. *Id.* at 388-89. Pursuant to this standard, we review the trial court's judgment, not the reasons given for it. *People v. Jones*, 399 Ill. App. 3d 341, 359 (2010).

¶ 32    Claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In the context of a second-stage postconviction claim of ineffectiveness, a defendant must make a substantial showing that: (1) counsel's performance was objectively unreasonable under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376 (2000). The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance. *Id.* at 377.

¶ 33    This standard applies equally when a defendant's claim is based on appellate counsel's failure to raise a particular issue on appeal. *Id.* Appellate counsel is not obligated to brief every conceivable issue on appeal, and appellate counsel is not ineffective for refraining from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is

patently wrong. *People v. Easley*, 192 Ill. 2d 307, 329 (2000). A defendant claiming ineffective assistance of appellate counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced the defendant. *People v. Childress*, 191 Ill. 2d 168, 175 (2000).

¶ 34 Defendant here argues direct appeal counsel should have argued the circuit court denied him a fair and adequate *Krankel* hearing on his posttrial ineffective assistance of trial counsel claim. A procedure for considering *pro se* posttrial claims of ineffective assistance of counsel has developed from *Krankel*, 102 Ill. 2d at 181, and its progeny. See *People v. Jackson*, 2020 IL 124112, ¶¶ 95-97. When a defendant brings a *pro se* posttrial claim of ineffective assistance of counsel to the trial court's attention, the trial court is to conduct an inquiry into the factual basis of the claim. *Id.* ¶ 97. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, it may deny the motion without appointing new counsel. *Id.* "A claim lacks merit if it is conclusory, misleading, or legally immaterial or does not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 40. In contrast, if the defendant's allegations show "possible neglect" of the case, new counsel should be appointed to represent the defendant at a hearing on his claims. *Jackson*, 2020 IL 124112, ¶ 97. Because a defendant need only raise a colorable claim of ineffectiveness at a preliminary *Krankel* inquiry, the correct question, in determining whether there was possible neglect, is to ask whether trial counsel's performance was arguably ineffective. See *McLaurin*, 2012 IL App (1st) 102943, ¶ 40; see also *People v. Hills*, 2021 IL App (2d) 190184-U, ¶ 86.

¶ 35 At the preliminary *Krankel* inquiry, the circuit court may consider both the factual basis for the claim and its legal merits. *People v. Roddis*, 2020 IL 124352, ¶ 70. "The court can 'base its

evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face.' " *Id.* ¶ 56 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)). The preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding. *People v. Jolly*, 2014 IL 117142, ¶ 38. The court may discuss the defendant's allegations with both the defendant and trial counsel. *Moore*, 207 Ill. 2d at 78. However, because the defendant is not appointed counsel at a preliminary inquiry, "it is critical that the State's participation at that proceeding, if any, be *de minimis*," and "the State should never be permitted to take an adversarial role against a *pro se* defendant at the preliminary *Krankel* inquiry." *Jolly*, 2014 IL 117142, ¶ 38.

¶ 36 Whether a trial court properly conducted a preliminary *Krankel* inquiry is a legal question that is reviewed *de novo*. *Jackson*, 2020 IL 124112, ¶ 98. If a preliminary inquiry is found to have been improperly conducted, the appropriate remedy on a direct appeal is to remand for a new preliminary *Krankel* inquiry before a different judge and without the State's adversarial participation. *Jolly*, 2014 IL 117142, ¶ 46.

¶ 37 Here, defendant asserts that what began as a standard preliminary *Krankel* inquiry quickly and improperly evolved into an adversarial hearing during which the ASA and defense counsel teamed up to contest the substance of his claims, while he remained unrepresented and was forced to argue *pro se* against them both. He argues that the court repeatedly told him to be quiet while allowing the ASA to participate. As examples of impropriety, he highlights that: the ASA told the court that the State did not present any statements at trial, and, when defendant attempted to explain what his statement was, the trial court told him to be quiet; the ASA inaccurately told the court there was no preservation order, and, after defendant pointed to the transcript of the preliminary

hearing, the ASA admitted he misspoke; the ASA inaccurately summarized what defendant's major contentions were; when defendant told the court his major concern was that counsel did not subpoena Officer Bower, the ASA interjected, "And this was a bench trial, Judge, where officers did in fact testify, police officers, Judge"; and the State was given "the final say" when the court asked the ASA if he had any argument and the ASA urged the court to deny the *pro se* posttrial motion.

¶ 38    Defendant maintains that the State's participation in the preliminary *Krankel* inquiry was improper. He argues that the trial court, in addition to referring to the proceeding as a "*Krankel* hearing," conducted it as such, even concluding the proceeding with an invitation to the ASA to make a final argument while defendant remained unrepresented. He maintains that his claim that he was denied a fair and adequate *Krankel* hearing is meritorious and, therefore, he has made a substantial showing that direct appeal counsel was ineffective for failing to raise the issue on direct appeal. As relief, he seeks a third-stage evidentiary hearing.

¶ 39    We agree with defendant that the record shows the trial court improperly allowed the State to participate during the preliminary *Krankel* inquiry into defendant's *pro se* claims of ineffective assistance of trial counsel. In this case, the ASA was an active participant in the inquiry, and his involvement went well beyond verifying concrete facts. See *People v. Fields*, 2013 IL App (2d) 120945, ¶ 40 ("the State may be asked to offer concrete and easily verifiable facts" but "no case law suggests that the State should be an active participant" and "typically, virtually no opportunity for State participation is offered during the preliminary inquiry"). Where, as here, an ASA's participation in a preliminary inquiry consists of "more than a few passing remarks," involves argument in opposition to a defendant's claims of ineffective assistance of counsel, and includes a

request to the trial court that it deny the defendant's motion, it is not *de minimis*. See *Jackson*, 2020 IL 124112, ¶ 114.

¶ 40    The record in this case shows that the ASA interjected several times during the inquiry, not only verifying facts, but also substantively disputing defendant's *pro se* claims of ineffectiveness. The ASA challenged defendant's factual allegations that he had made an inculpatory statement and that a preservation order for the 911 recording existed. The ASA twice offered summaries to the trial court of what had happened earlier in the *Krankel* proceedings. During the second recap, the ASA identified issues that it characterized as "two of [defendant's] major concerns." However, defendant informed the court that neither of the issues identified by the ASA was his "biggest beef." When defendant stated that his major concern was counsel's failure to subpoena Officer Bower, the ASA interjected that police officers did in fact testify at defendant's bench trial. Most significantly, at the trial court's invitation, the ASA argued at the end of the proceedings that defendant's *pro se* motion should be denied because defense counsel had properly tried the case, that counsel could not find the witnesses, that the event query did not contain a description of the suspect, that a preservation order had not been timely filed, that the case had "gone by agreement all the way," and that he believed there was "no substantial evidence or no merit to the defendant's allegations." Contrary to the State's position, we cannot characterize this level and manner of participation in the proceedings as nonadversarial or *de minimis*. See *Jackson*, 2020 IL 124112, ¶ 114.

¶ 41    Because the ASA substantively argued against defendant's *pro se* claims of ineffective assistance, characterizing them as lacking in merit, and the ASA's participation was not *de minimis*, the preliminary *Krankel* inquiry was improper. See *Jolly*, 2014 IL 117142, ¶¶ 38-40;

*Fields*, 2013 IL App (2d) 120945, ¶¶ 40-41. It was further improper for the trial court to rely on its general knowledge of defense counsel's abilities as an attorney, rather than strictly on her performance in defendant's case. See *Jolly*, 2014 IL 117142, ¶¶ 31, 36. The *Krankel* issue was apparent from the record. As such, we find that defendant has made a substantial showing that appellate counsel's failure to raise this issue on direct appeal constituted deficient performance.

¶ 42    Further, we find that defendant has made a substantial showing of prejudice. Given the nature and extent of the State's adversarial participation in the preliminary *Krankel* inquiry and the trial court's consideration of its general knowledge of defense counsel's abilities, there is a reasonable probability that had the issue been raised on direct appeal, this court would have remanded the matter for a proper preliminary *Krankel* inquiry. See *Jolly*, 2014 IL 117142, ¶ 46 (the proper remedy on direct appeal for the State's improper participation in a preliminary *Krankel* inquiry is to remand for a new inquiry before a different judge and without the State's adversarial participation); *Fields*, 2013 IL App (2d) 120945, ¶ 42 (noting that courts have reversed and remanded "when the preliminary inquiry morphed into an adversarial hearing with the State participating and the defendant appearing *pro se*").

¶ 43    In sum, defendant has made a substantial showing of ineffective assistance based on appellate counsel's failure to argue that the trial court improperly allowed for the State's adversarial participation during the preliminary *Krankel* inquiry and improperly relied on its knowledge of defense counsel's performance in other cases. That is, defendant has made a substantial showing both that appellate counsel's performance was deficient and that he was prejudiced, as a reasonable probability exists that had appellate counsel raised the issue on direct appeal, this court would have remanded for a new preliminary *Krankel* inquiry. Given that

defendant has satisfied both prongs of the *Strickland* analysis, we conclude that the circuit court erred in granting the State's motion to dismiss this claim in his postconviction petition. Accordingly, we reverse and remand for a third-stage postconviction evidentiary hearing on this claim of ineffective assistance of appellate counsel. See *People v. Hillis*, 2021 IL App (2d) 190184-U, ¶¶ 2, 99, 102 (reversing second-stage dismissal of claim that appellate counsel was ineffective for failing to argue on direct appeal that trial court conducted an improper *Krankel* inquiry, and remanding for third-stage evidentiary hearing on that claim); see also *People v. Lara*, 317 Ill. App. 3d 905, 908 (2000) (partial dismissal is allowed at the second stage of postconviction proceedings).

¶ 44    As a final matter, we take judicial notice that the original circuit court judge in this case has retired from the bench. See *People v. Rivera*, 221 Ill. 2d 481, 516 (2006). Therefore, a different judge will consider the postconviction petition on remand. See *People v. Smith*, 326 Ill. App. 3d 831, 855 (2001).

¶ 45    For the reasons explained above, the judgment of the circuit court is reversed and the cause is remanded for a third-stage evidentiary hearing.

¶ 46    Reversed and remanded.